UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:17-CR-0012 |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL J. W. POTTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to 28 U.S.C. § 636 and standing orders of the District Court for a Report and Recommendation on Defendant's Motion to Suppress Statements [Doc. 405]. The Government filed a response in opposition [Doc. 430]. On November 6, 2017, the Court conducted an evidentiary hearing on the motion. For the reasons stated, the Court RECOMMENDS the Motion to Suppress [Doc. 405] be DENIED.

**I.    BACKGROUND**

**A.    Introduction**

Michael Potter ("Potter") is charged with conspiracy to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) [Doc. 3]. The Government has given notice of its intent to seek increased punishment due to Potter having one or more prior felony drug convictions [Doc. 420].

Potter's motion alleges that law enforcement questioned him on two occasions, one on June 26, 2015 and one on June 27, 2015. For the questioning that occurred on June 26, 2015, he claims that he was subject to custodial interrogation for purposes of *Miranda* without having received any

1

*Miranda* warnings. He also claims that he requested an attorney during this questioning but his request was not honored [Doc. 405, pg. 1-2].

For the interview on June 27, 2015, Potter first claims that law enforcement approached him to question him again, even though he had already invoked his right to counsel. Second, he claims that he again invoked his right to counsel prior to questioning, but that his request was not honored. Third, while he admits to signing the "Advice of Rights" form containing the *Miranda* warnings and waiver of his right to counsel, he claims that this was an end-around *Miranda* that involved the "question first" and "warn later" that was condemned in *Missouri v. Seibert*, 542 U.S. 600 (2004). Potter's motion seeks to suppress his statements from these encounters on the grounds that his statements were obtained in violation of the Fifth and Sixth Amendments to the United States Constitution.

**B.     Hearing Testimony**

Three witnesses testified at the November 6, 2017, evidentiary hearing regarding Potter's motion. A summary of their testimony follows.

**1.     Special Agent Shannon Russell of the 2nd Judicial Drug Task Force**

Special Agent Shannon Russell ("Agent Russell") testified that in June 2015, he was investigating a methamphetamine conspiracy operating in the region. Potter was not a target, but Agent Russell and Agent Jason Roark, also with the DTF, were interested in speaking with him about what he knew about methamphetamine distribution in the area. Concerning the June 26, 2015 encounter, Agent Russell testified he had no recollection of even talking with Potter on that date. However, he indicated that he had recently spoken with Agent Roark, who reminded him that they had attempted to interview Potter on June 26, but Potter was unwilling to speak with them. Agent Russell testified if anything of substance had occurred at that meeting, he would have

kept notes from the meeting. He reviewed the entire contents of his file and found no notes from this June 26, 2015, meeting.

Agent Russell did recall interviewing Potter on June 27, 2015 at the Sheriff's office. Agent Russell testified that he and Agent Roark met with Potter at Potter's request. At the start of the meeting, Agent Russell read Potter the "Advice of Rights" form which contained the *Miranda* rights and waiver.[1] After reading the contents of the form to Potter, he and Potter signed it on June 27, 2015 at 11:00 a.m. (Exhibit 1). After executing the waiver form, Agent Roark questioned Potter about what he knew about the distribution of methamphetamine in the region. Potter gave a detailed statement implicating himself and others in an extensive drug conspiracy (Exhibit 2). When Potter indicated he wished to stop the interview, agents ceased questioning him. Agent Russell testified that at no time during the interview did Potter request an attorney. Agent Russell acknowledged that Potter may have spoken about an attorney, but denied Potter requested counsel. Agent Russell also testified that Potter did not ask to stop the interview to obtain counsel. If he had, he and Agent Roark would have terminated the interview.

---

[1] The Advice of Rights form (Exhibit 1) advises Potter of the following:

YOUR RIGHTS

Before we ask you any questions, you must understand your rights:
- You have the right to remain silent.
- Anything you say can be used against you in court.
- You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.
- If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

WAIVER OF RIGHTS

I have read or have had read to me my constitutional rights. I understand what my rights are, and I am willing to make a statement and answer questions without a lawyer present.

            s/M. Potter

**2.     Testimony of William Crawford, Sullivan County Jail Records Custodian**

Potter called Mr. William Crawford, the records custodian for Sullivan County jail, who brought the jail log records for June 26 and 27, 2015 (Exhibit 3). Crawford explained that the log shows the time a prisoner was brought in and placed in a holding cell. While the log does not denote if a detective comes to the jail to interview a prisoner, it does identify if a prisoner is removed from a cell to meet with a detective. Additionally, the log book does not reflect when an inmate is removed from a cell prior to classification. Once an inmate has been classified, however, Crawford testified that jail personnel should record when an inmate is removed from the cell. Crawford identified log entries on June 27, 2015[2] indicating that Potter left "H" cell to see a detective and then returned thereafter.[3] No entry regarding a meeting with detectives was listed on June 26, 2017.

**3.     Testimony of Defendant, Michael Potter**

  **i.     July 26, 2015**

Potter testified that he was arrested for a probation violation at Wal-Mart in Bristol, Tennessee, and taken to the Sullivan County jail around 3:00 p.m. on June 26, 2017. Potter was not given *Miranda* warnings at the time of his arrest and was taken "straight to jail." Upon arrival, Potter was taken to a conference room at the jail. There, Agents Russell and Roark were waiting. Potter testified the agents advised him of their affiliation with DTF. He asked why they were there to which they responded that they had been called out to search his vehicle and found two Klonopin

---

[2] The log pages for June 27, 2015 were mis-identified as June 25. The witness clarified the correct date and the court denoted the correct date on the exhibit (Exhibit 3).

[3] The log book indicates that on July 27, 2015 Potter was taken out of his cell at 15:11 and returned at 16:16.

pills.[4] Potter testified that the agents advised him they wanted to talk with him about methamphetamine rather than what they found in his car.

Potter testified that he told them he wanted to cooperate, but wanted a lawyer first. According to Potter, the agents then walked him out toward a steel door to return to the booking area. Agent Roark commented to Potter that he had previously put Potter in prison, but he could now help Potter and pointed back to the conference room. At that point, Potter said he returned to the conference room with them. Potter then asked the agents what was "in it for" him to provide information. Potter testified that Agent Roark told him he could get him out on bond as an informant.[5] Potter then admitted to involvement in trafficking in large amounts of crystal methamphetamine. He claims he was not advised of his *Miranda* warnings during his interaction with law enforcement on June 26, 2015.

At the hearing, Potter claimed that what he had told the agents about his involvement in trafficking in methamphetamine was all a lie. He testified he lied to the agents because he wanted to get out of jail. All of the information he knew about trafficking in methamphetamine he learned from someone else. He was simply repeating what they had told him. He claims that he was never actually involved in any methamphetamine trafficking. Indeed, at the hearing, he testified that he would have said anything to get out of jail. On cross, he testified that he would not lie to the Court because he was under oath. He also claimed that he would not have admitted to buying crystal methamphetamine had he known he would be facing life in prison if convicted.

---

[4] Potter admitted he was charged and pleaded guilty to possession of the pills and drug paraphernalia and was sentenced to "11/29."

[5] Potter testified he is a "likeable" person who has a good reputation and the ability to buy drugs as a law enforcement informant. He believed Agent Roark thought he could "get in good" with methamphetamine dealers.

### ii. July 27, 2015

Potter testified that he did not request an interview on June 27, 2015. Instead, the agents returned, and Agent Roark informed Potter that he had good news but would first have to read him his rights. Agent Russell read Potter his *Miranda* warnings, and Potter signed the "Advice of Rights" form.[6] Potter testified that Agent Roark told him to repeat what he had said the day before. Potter then repeated the information he had given the day before.

Potter claimed he asked for an attorney multiple times at the start of the interrogation and during the course of his meeting with the agents. In response to many of their questions, Potter testified he asked if they thought a lawyer would let him answer the question if a lawyer were present. Potter claimed that Agent Roark would tap on the "Advice of Rights" form and tell him he waived his right to an attorney. Potter claims he asked for an attorney probably ten times and was informed he had waived that right. Potter also claimed that Agent Roark had threatened him that if he did not cooperate, Agent Roark was authorized to file charges.

### 4. Rebuttal Testimony of Agent Russell

On rebuttal, Agent Russell testified that, contrary to Potter's claim, he did not search Potter's vehicle at Wal-Mart. Agent Russell contends that he had never been called out to search a vehicle at Wal-Mart as Potter had claimed. Agent Russell also testified that he has participated in countless interviews with Agent Roark and has never known Agent Roark to question a witness without providing *Miranda* warnings. He also contested Potter's claim that Agent Roark promised him he would be released on bond if he cooperated with the agents or that Agent Roark threatened Potter with criminal charges if he failed to cooperate. Agent Russell also disputed Potter's claims that Agent Roark tapped his pen on the "Advice of Rights" form and told Potter that execution of

---

[6] Potter verified his signature on the form in his testimony. [Ex. 1]

6

the document meant he had waived his right to counsel. Agent Russell handled the "Advice of Rights" form on June 27, and once Potter had signed the waiver, Agent Russell placed the form in his binder. The form would not have remained on the table during the interview for Agent Roark to tap or point to with his pen.

C. **Findings of Fact**

After considering the testimony of the witnesses, their demeanors, and the Court's overall impression of the witnesses, the Court makes the following findings of fact. Potter was arrested on July 26, 2015 on a probation violation and transported to the Sullivan County jail. Soon after Potter's arrest, Agents Roark and Russell approached him about providing information regarding methamphetamine trafficking in the area. Potter declined to speak with them but did not request an attorney. Potter was returned to his cell. On July 27, 2015, the next day, Potter requested another meeting with the agents. At around 11:00 a.m. on July 27, 2015, Potter and the agents reconvened their meeting.[7] Prior to interviewing Potter, Agent Russell read Potter his *Miranda* warnings as noted in Exhibit One. Potter voluntarily signed the waiver. (Exhibit 1).

At that meeting, Potter voluntarily spoke with the agents. At no point during the July 27th meeting did he invoke his right to counsel. Instead, he willingly met with the agents and admitted to being involved in a crystal methamphetamine distribution ring in an effort to secure his release on bond on his pending violation of probation charge. His claim that he requested counsel on both July 26th and 27th is not credible. The Court finds that Potter did not unequivocally request

---

[7] Upon a review of the exhibits, the Court notes that the log book does not contain an entry showing Potter being taken to meet with the agents on July 27, 2015 at 11:00 a.m. when he signed the waiver form. Rather it records a 15:11 time. This discrepancy does not change the Court's opinion regarding Potter's credibility or that of Agent Russell. Crawford, the records custodian, readily identified a number of different scenarios that would explain how an inmate could be removed from the cell to talk with law enforcement without it being recorded in the log book.

7

counsel on either date law enforcement met with him. In fact, the Court finds Potter's admission telling. He testified that he lied to the DTF agents, and at the evidentiary hearing, he admitted that he would say "anything" to be released from jail on bond. Thus, the Court finds his story not credible.

## II. ANALYSIS

Potter claims his statement was obtained in violation of his rights under both the Fifth and Sixth Amendments to the United States Constitution. The Fifth Amendment to the United States Constitution provides that a defendant cannot "be compelled in any criminal case to be a witness against himself." *United States v. Protsman,* 74 F.App'x 529, 532 (6th Cir. 2003) (citing U.S. Const. amend. V). In *Miranda v. Arizona,* the Supreme Court upheld a suspect's constitutional right against compelled self-incrimination and established that no criminal suspect may be subjected to custodial interrogation without first being advised of the right to remain silent and the right to have counsel present. 384 U.S. 436, 478–79 (1966). "To ensure compliance with this rule, incriminating statements elicited during custodial interrogation prior to *Miranda* warnings cannot be admitted at trial." *United States v. Malcolm,* 435 F.App'x 417, 420 (6th Cir. 2011). "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." *North Carolina v. Butler,* 441 U.S. 369, 373 (1979).

In this case, agents did not violate Potter's Fifth Amendment rights. Prior to their questioning him, they read to him his *Miranda* warnings contained on the "Advice of Rights" form. (Exhibit One). That form specifically apprised Potter of his rights and gave him the option, if he desired, to waive those rights and willingly speak with law enforcement. Potter signed his name, acknowledging he had "read or have had read to me my constitutional rights. I understand

what my rights are, and I am willing to make a statement and answer questions without a lawyer present." (Exhibit One).

The Court finds Potter voluntarily waived his right to counsel prior to speaking with the agents. A waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Put differently, "coercive police activity" is required to establish an involuntary waiver. *United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir. 2010) (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)); see also *United States v. Dunn*, 269 F.App'x. 567, 572 (6th Cir. 2008). A waiver is "knowing and intelligent" when "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis*, 560 U.S. at 382–83 (quoting *Moran*, 475 U.S. at 421). Potter voluntarily waived his right to counsel and elected to speak with law enforcement. He had hoped that if he admitted to his involvement in a methamphetamine conspiracy agents would secure his release on his violation of probation charges. He bet wrong. Neither at the hearing or in his motion does Potter identify any coercive police activity that would in any way raise an issue about the voluntariness of his waiver. The Court finds his subsequent statement was not obtained in violation of *Miranda* and the Fifth Amendment.

The Court likewise finds that Potter's Sixth Amendment rights have not been violated. The Sixth Amendment guarantees the assistance of counsel to criminal defendants. "This right is triggered 'at or after the time that judicial proceedings have been initiated ... whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *Alexander v. Smith*, 311 F. App'x 875, 887 (6th Cir. 2009) (quoting *Fellers v. United States*, 540 U.S. 519, 523, 124 S.Ct. 1019, 157 L.Ed.2d 1016 (2004)). "Once the Sixth Amendment has attached, the

government may not 'deliberately elicit' incriminating statements from the defendant without the presence of his attorney." *Id*. (quoting *United States v. Henry*, 447 U.S. 264, 270, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980)). As with the Fifth Amendment, "the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009). The Sixth Amendment right to counsel may be waived even before the defendant is represented by counsel. *Id*. A suspect's valid waiver of his *Miranda* rights generally amounts to a waiver of his Sixth Amendment right to counsel too, "even though the *Miranda* rights purportedly have their source in the Fifth Amendment." *Montejo*, 556 U.S. at 786. Because the Court finds Potter's *Miranda* waiver valid, this waiver was sufficient to waive his right to counsel under the Sixth Amendment as well. See *Montejo*, 556 U.S. at 786.

Regardless of the waiver, Potter contends that he invoked his right to counsel at both the June 26th and 27th meetings with the agents. To invoke one's right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994)(quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). There was nothing the Court found credible at the evidentiary hearing that would fall into this category. Potter's claim that his statement to law enforcement was a lie told in an effort to secure his release from jail undercuts his claim that he requested counsel throughout the interview. If anything, Potter was not interested in having an attorney present, he wanted out of jail and would say anything he thought would improve his odds of release. Potter may have mentioned an attorney but nothing he said would constitute an

unambiguous request for counsel.[8] Law enforcement is not required to cease questioning upon the suspect making an ambiguous or equivocal reference to an attorney. *Id*. Even if Potter asked the agents whether an attorney would allow him to answer a question they asked, this question is clearly not an unequivocal request for counsel. *See Henness v. Bagley*, 644 F.3d 308, 320-21 (6th Cir. 2011) ("I think I need a lawyer" is not an unambiguous requested for counsel); *see also United States v. Carillo*, 660 F.3d 914, 924 (5th Cir. 2011) ("I wish I had a lawyer," in the context of defendant "weighing the pros and cons of talking to the detectives outside the presence of a lawyer"); *United States v. Montes*, 602 F.3d 381, 385 (5th Cir. 2010) ("Maybe I should get an attorney" or "Do I need an attorney?" were ambiguous). The agents properly proceeded with questioning in either scenario. The Court finds Potter did not invoke his right to counsel at either meeting with law enforcement.

Potter's final argument is that agents violated the Fifth Amendment by questioning him first without *Miranda* warnings on July 26th, secured a confession and then the next day, on July 27th, provided the warnings, obtained a waiver, and then had him repeat the confession. He argues that the Supreme Court in *Seibert* condemned that two-stage interrogation process. Potter is correct in his reading of *Seibert* but wrong in applying it to these facts. In *Seibert,* the plurality opinion concluded that inserting *Miranda* warnings into the middle of "coordinated and continuing interrogation" would deprive a defendant of "his ability to understand the nature of his rights and

---

[8] "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning . . . Rather, the suspect must unambiguously request counsel. *Davis*, 512 U.S. at 459 (emphasis in original). The person "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, [case law] does not require that the officers stop questioning the suspect." *Davis*, 512 U.S. at 459 (citing *Edwards v. Arizona*, 451 U.S. 477 (1981).

the consequences of abandoning them." *Id*. at 613-614. In this case, *Seibert* provides no guidance as the Court finds that Potter did not give a statement on July 26th. Unlike in *Seibert,* law enforcement did not use a two-stage interrogation process in questioning Potter. Thus, *Seibert* is not applicable.

**III.   CONCLUSION**

Potter's statement to law enforcement, as summarized in Exhibit 2, was not obtained in violation of the rights secured under the Fifth or Sixth Amendment to the U.S. Constitution and is not otherwise subject to suppression. Potter voluntarily waived his right to counsel and did not invoke that right during questioning. Based on the foregoing reasons, the Court respectfully **RECOMMENDS** that Potter's Motion to Suppress Statements [Doc. 405] be **DENIED**.[9]

Respectfully submitted,

s/ Clifton L. Corker
United States Magistrate Judge

---

[9] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).