UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MICHAEL JW POTTER,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Petitioner,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀No. 2:20-CV-00120-JRG-CRW
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
UNITED STATES OF AMERICA,⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Respondent.⠀⠀⠀⠀⠀⠀⠀)

**<u>MEMORANDUM OPINION</u>**

⠀⠀⠀⠀⠀This matter is before the Court on Petitioner Michael JW Potter's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1], Mr. Potter's Memorandum of Law [Doc. 2], the United States' Response [Doc. 8], Mr. Potter's Reply [Doc. 17], and Mr. Potter's Supplement [Doc. 21]. For the reasons herein, the Court will deny Mr. Potter's motion.

## I.⠀⠀BACKGROUND

⠀⠀⠀⠀⠀In 2017, the United States charged Mr. Potter with conspiring to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 21 U.S.C. § 846. [Indictment, Doc. 3, at 1, No. 2:17-CR-00012-3-JRG-CRW]. A petit jury later found him guilty of this charge. [Verdict Form, Doc. 575, at 1–2, No. 2:17-CR-00012-3-JRG-CRW]. With a total offense level of thirty-eight and a criminal history category of VI, Mr. Potter—who had seven prior drug offenses—had a guidelines range of life imprisonment, [PSR, Doc. 729, ¶¶ 68–69, No. 2:17-CR-00012-3-JRG-CRW; Statement of Reasons, Doc. 894, at 1, No. 2:17-CR-00012-3-JRG-CRW], and the Court sentenced him to life imprisonment, [J., Doc. 893, at 2, No.

2:17-CR-00012-3-JRG-CRW]. He appealed his conviction and sentence on several grounds, and the Sixth Circuit, in rejecting his appeal, recited the facts of his case as follows:

> On appeal, Potter challenges his conviction and sentence. As for his conviction, he argues that the police elicited his statements after he invoked his right to an attorney under Miranda v. Arizona, 384 U.S. 436 (1966), and so violated the bright-line rule to stop questioning adopted by *Edwards v. Arizona*, 451 U.S. 477 (1981). As for his sentence, he argues that the Eighth Amendment bars his mandatory term of life because the child-focused logic of *Miller v. Alabama*, 567 U.S. 460 (2012), should expand to cover adults who commit nonviolent offenses. We disagree with Potter on both fronts, reject his remaining arguments, and affirm his conviction and sentence.

## I.

> In early 2015, Potter struck a deal with an acquaintance, Tammy Goodson, to make money by selling methamphetamine in east Tennessee. Goodson would introduce Potter to Nathan Hogan, a Georgia meth supplier, and Potter would reciprocate by giving her a certain amount of money and meth for each ounce he bought from Hogan. In the first half of 2015, Potter and Goodson twice drove to Georgia to buy between eight and ten ounces of meth from Hogan (or his runner). After Goodson's arrest, Potter made a third trip during which he bought 20 ounces from Hogan. Upon each return to Tennessee, Potter went about selling the drugs. About this time, for example, Brandin Hyde contacted Potter in search of a new supplier. Potter offered Hyde an eventual price discount to undercut Potter's "competition" if Hyde brought repeat business his way. Yet Potter and Hyde completed just one transaction.
> That is because, on June 26, 2015, police arrested Potter on unrelated charges. That night, he told police he did not want to talk. The next day, he changed his mind. After signing a Miranda waiver, he spoke with Agents Jason Roark and Shannon Russell from the Tennessee Second Judicial District Drug Task Force. During this interrogation, Potter admitted that, starting in August 2014, he had bought about ten pounds of methamphetamine from a different Georgia supplier (not Hogan) and sold it in east Tennessee.
> Shortly after his arrest, Potter asked his younger brother, Steven Hilliard, to collect debts from people who owed him. Hilliard recouped funds from several people, including $4,700 from a person who owed Potter for meth purchases. At Potter's urging, Hilliard also contacted Hogan to give him a heads up that Potter had been arrested. That call provided the spark that eventually led Hilliard to take his brother's place in the distribution scheme. During the second half of 2015, Hilliard traveled to Georgia to buy methamphetamine from Hogan using the money he had collected for Potter. Potter was initially upset upon learning of this arrangement, but the brothers ultimately agreed that Hilliard would reimburse Potter in full and pay Potter a "couple of hundred dollars" for each visit to see Hogan. Hilliard bought a pound or two of meth on each trip.

2

Potter remained in custody during this time, but renewed his distribution efforts soon after his October 2016 release. He contacted Hogan via Facebook, leading to a four-ounce meth purchase. He later bought eight ounces from Hogan. In February 2017, Hogan had arranged to meet Potter for another exchange, but police arrested Hogan on the day of the deal. Potter still completed the transaction through Hogan's runner. Their transactions ended shortly thereafter. The United States indicted Potter and twenty-four others—including Hogan, Goodson, and Hilliard—for a conspiracy starting on or around January 2015 to distribute fifty grams or more of methamphetamine.

[Sixth Circuit Op., Doc. 947, at 1–4, No. 2:17-CR-00012-3-JRG-CRW]. Mr. Potter, having failed to capitalize on his appeal, has now timely moved for relief under 28 U.S.C. § 2255. The United States opposes his motion. Having carefully reviewed Mr. Potter's claims and the parties' arguments, the Court is now prepared to rule on them.

## II.    STANDARD OF REVIEW

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). To warrant relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To warrant relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error

3

that deprived him of "the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 354 (1994); *see Grant v. United States*, 72 F. 3d 503, 505–06 (6th Cir. 1996).

In sum, "[a] prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). In support of one of these three bases for relief, a petitioner's allegations must consist of sufficient facts showing he is entitled to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003) (quotation and citation omitted). And similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," he will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. The standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d `695, 698 (6th Cir. 1999) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Reed*, 512 U.S. at 354)). This is so because "[t]he reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system." *Addonizio*, 442 U.S. at 184 (footnote omitted); *see Custis v.*

4

*United States*, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." (quotation omitted)); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

### III. ANALYSIS

In pursuing relief under § 2255, Mr. Potter brings multiple claims. First, he asserts that his attorney was ineffective because he "refused to call defendant's witnesses" at trial. [Pet'r's Mot. at 4]. Second, he claims that the Court applied an incorrect guidelines range at sentencing because the probation officer wrongly used his prior drug offenses to increase his base-offense level. [*Id.* at 5; Pet'r's Mem. at 5]. Third, he contends that his attorney was ineffective because he failed to secure a witness's transportation to trial. [Pet'r's Mot. at 7]. Fourth, he alleges that his attorney was ineffective because he failed to introduce certain evidence at trial. [*Id.* at 8]. In response, the United States maintains that Mr. Potter's claims of ineffective assistance of counsel are meritless and that he has procedurally defaulted on his claim that the Court used an incorrect guidelines range. [United States' Resp. at 4–7].

### A. Ineffective Assistance of Counsel

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right is the right not merely to representation but to *effective* representation. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). When a petitioner contests his sentence by raising the specter of ineffective assistance of counsel, he normally can succeed only by satisfying the familiar *Strickland* test, a two-pronged test that requires a showing of deficient performance and prejudice. *Strickland v. Washington*,

466 U.S. 668, 688, 694 (1984). To establish deficient performance, a petitioner must show that his counsel, through the prism of an objective standard of reasonableness, "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Id.* at 687. And to establish prejudice, a petitioner must demonstrate that his counsel's deficient performance was so serious that it deprived him of his fundamental right to due process, *id.*, or in other words, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.[1]

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citations omitted). Indeed, "[c]ounsel's performance is strongly presumed to be effective." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015) (quotation omitted); *see Thelen v. United States*, 131 F. App'x 61, 63 (6th Cir. 2005) ("A deferential standard of review applies to ineffective assistance claims. A defendant must show that counsel's representation was so 'thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" (quoting *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996))); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." (citation omitted)). Even if a particular aspect of counsel's performance proves to be deficient, that deficiency "does not warrant setting aside the judgment of a criminal proceeding" unless it has a prejudicial effect on the judgment. *Strickland*, 466 U.S. at 691 (citation omitted).

---

[1] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

6

1. <u>Refusal to Call Witnesses</u>

Mr. Potter, in his first volley against his attorney, claims that "[d]uring the course of the jury trial defense counsel refused to call defendant's witnesses and his failure to do so created errors so serious that it denied [him] a fair trial[.]" [Pet'r's Mot. at 4]. According to Mr. Potter, he "pleaded" with his attorney to call certain witnesses who had "personal knowledge of the issues and facts relating to the case," but his attorney refused to do so, and "but for counsel's unprofessional conduct he would have [had] a different outcome of the trial." [Pet'r's Mem. at 4]. Mr. Potter has also filed affidavits from multiple individuals—including a former girlfriend and several roommates—who state what they would have testified to if Mr. Potter's attorney had subpoenaed them. [Pet'r's Affs., Doc. 2, at 7–10; Pet'r's Suppl. at 6–14]. In response, the United States maintains that Mr. Potter's attorney's decision not to call these witnesses was a matter of trial strategy and that his "trial strategy—contesting the government's evidence while presenting little defense evidence—fits comfortably within the scope of reasonable professional assistance." [United States' Resp. at 6].

"The decision whether to call a witness to testify at trial is a matter of strategy that falls squarely within defense counsel's domain." *Javaherpour v. United States*, Nos. 4:04-cv-38, 4:01-cr-11, 2007 WL 1041266, at *3 (E.D. Tenn. Apr. 6, 2007); *see generally United States v. Hurley*, 10 F. App'x 257, 260 (6th Cir. 2001) ("The tactical decisions of trial counsel are particularly difficult to attack, and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy." (citation omitted)). "A defense counsel," therefore, "has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant," *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (quotation omitted); *see Caldwell v. Lewis*, 414 F. App'x 809, 815–16 (6th Cir.

2011) ("[A]n attorney's failure to present available *exculpatory* evidence is ordinarily deficient, unless some cogent tactical or other consideration justified it." (emphasis added) (quotation and citations omitted))). Mr. Potter does not allege that his prospective witnesses, whom his attorney had allegedly refused to call, would have offered exculpatory evidence in his favor, and in the absence of this allegation, he makes no headway in establishing that his attorney's failure to call these prospective witnesses amounted to deficient performance.

In addition, these prospective witnesses' affidavits do not contain exculpatory evidence. *See United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) (recognizing that "explicitly exculpatory" evidence is evidence that "tend[s] to negate directly the guilt of the defendant"). Three of the witnesses state that, to their knowledge, Mr. Potter did not sell methamphetamine between August 2014 and the date of his arrest on June 2015, and a fourth witness states that Mr. Potter did not sell methamphetamine for a mere forty-day period leading up to his arrest in June 2015. But none of these statements necessarily directly negates Mr. Potter's guilt because the conspiracy spanned a much longer timeframe: on or about January 1, 2015, until on or about February 14, 2017. [Indictment at 2]; *see* [Trial Tr., Doc. 860, at 84:9–11 (containing defense counsel's acknowledgment, in closing argument, that the conspiracy lasted from "on or about January 1, 2015, until on or about February 14, 2017")]. The fact that the prospective witnesses state that Mr. Potter did not sell methamphetamine from August 2014 through December 2014 is of no consequence, because these dates predate the conspiracy. At best, their statements might show that Mr. Potter did not sell methamphetamine from January 2015, through June 2015—a mere five-month period—but even if so, their statements do not exculpate him of wrongdoing throughout the course of the *entire* conspiracy.

Besides, even if Mr. Potter's attorney had subpoenaed these prospective witnesses and they had testified that Mr. Potter did not sell methamphetamine during this five-month period, the Court would still fail to see how the trial's outcome would have been different because the evidence showed that he sold methamphetamine throughout the course of the conspiracy. *See Strickland*, 466 U.S. at 694 (stating that a petitioner must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). As the Sixth Circuit acknowledged when it rejected Mr. Potter's appeal, the evidence at trial showed:

- "In the first half of 2015, Potter and Goodson twice drove to Georgia to buy between eight and ten ounces of meth from Hogan (or his runner)."

- "During the second half of 2015, Hilliard traveled to Georgia to buy methamphetamine from Hogan using the money he had collected for Potter," and "Hilliard would reimburse Potter in full and pay Potter a 'couple of hundred dollars' for each visit to see Hogan."

- "Potter remained in custody during this time, but renewed his distribution efforts soon after his October 2016 release. He contacted Hogan via Facebook, leading to a four-ounce meth purchase. He later bought eight ounces from Hogan. In February 2017, Hogan had arranged to meet Potter for another exchange, but police arrested Hogan on the day of the deal."

[Sixth Circuit Op. at 2–3]. The jury was free to believe, and to draw any reasonable inferences from, all this evidence, which undermines Mr. Potter's contention that the outcome of the trial would have been different if his attorney had called his prospective witnesses. *See United States v. Johnson*, No. 97-2164, 1999 WL 357826, at *1 (6th Cir. May 26, 1999) ("[The defendant] complains that all of  [the government's witnesses'] testimony was self-serving, incredible and otherwise unreliable. Whatever its weaknesses, however, this testimony is evidence pointing to guilt."). In short, the evidence was sufficient to sustain a conviction of Mr. Potter even if his prospective witnesses had testified on his behalf.

9

In sum, Mr. Potter fails to allege facts demonstrating that his attorney was ineffective for failing to call his prospective witnesses—none of whom offer exculpatory evidence in their affidavits—and he also does not sufficiently demonstrate that he suffered prejudice from his attorney's failure to call these witnesses. *See Dibble v. United States*, 103 F. App'x 593, 596 (6th Cir. 2004) (affirming the district court's denial of the petitioner's § 2255 motion when the petitioner failed to "identify any prejudice that she suffered as a result of" counsel's failure to call a witness). The Court emphasizes that Mr. Potter's attorney "is strongly presumed to have rendered adequate legal assistance, and to have made all decisions in the exercise of reasonable professional judgment and sound trial strategy," *Talley v. United States*, Nos. 1:00-cv-74, 1:94-cr-118, 2006 WL 3422997, at *10 (E.D. Tenn. Nov. 27, 2006) (citing *Nix v. Whiteside*, 475 U.S. 157, 165 (1986)); *Strickland,* 466 U.S. at 689-90))), and Mr. Potter's allegations are insufficient to defeat this presumption. He therefore falls short of satisfying *Strickland*'s two-part test.

## 2. Failure to Secure a Witness's Transportation to Trial

Next, Mr. Potter faults his attorney because he filed a motion "to compel [sic] transport of [a] witness" but "this motion was submitted so close to Defendants [sic] trial date that the USMS could not transport [the] witness for Defendants [sic] trial." [Pet'r's Mot. at 7]. Mr. Potter goes on to allege that, "[u]pon being informed by the USMS of this deilima [sic] Defendants [sic] attorney proceeded to file a motion . . . to withdraw [the] motion [to transport]. . . which resulted in desired witness not being transported for Defendants [sic] trial." [*Id.*]. According to  Mr. Potter, his attorney's failure to secure this witness's transportation to trial rendered his representation ineffective under the Sixth Amendment. [*Id.*].

Mr. Potter's claim is baseless for two reasons. First, as the United States points out, his attorney sought to withdraw the motion only after representing to the Court that Mr. Potter had

agreed to the motion's withdrawal. [Mot. to Withdraw, Doc. 538, at 1, No. 2:17-CR-00012-3-JRG-CRW]. "It goes without saying . . . that when the client does consent to [a] decision . . . he cannot then turn around and claim ineffective assistance on the basis that his attorney simply followed orders." *United States v. Backes*, No. 96-35888, 1998 WL 4728, at *1 (9th Cir. Jan. 8, 1998). Second, Mr. Potter—who, in his reply brief, identifies this uncalled witness as Richard Allan Davis, a drug dealer who was previously convicted in a separate case before this Court— provides the Court with no affidavit from Mr. Davis. *See Talley*, 2006 WL 3422997 at *10 ("The Court will not grant any § 2255 relief to [the petitioner] or hold an evidentiary hearing based on the purported potential testimony of uncalled witnesses where [the petitioner] has not bothered to submit supporting affidavits from them." (citations omitted)).

In lieu of an affidavit, Mr. Potter, in his reply brief, relies on a convoluted argument. He claims that Mr. Davis would have testified that he charged Mr. Potter "less than $1,400 per ounce" of methamphetamine, and in his view, this testimony "would have ma[de] . . . it less probable that [he] joined the indicted conspiracy." [Pet'r's Reply at 1]. More specifically, he asserts that "[i]t is reasonable to conclude that [he] was not one of Davis's methamphetamine customers because [he] did not know how much he charged his customers." [*Id.* at 8]. But even if Mr. Davis's testimony allowed the jury to infer that Mr. Potter never conspired to purchase methamphetamine from Mr. Davis, that testimony would not necessarily have precluded the jury from finding that Mr. Potter conspired to purchase methamphetamine from Mr. Hogan—a finding that the jury could have permissibly made based on the evidence. Mr. Potter, however, offers a counterargument: "If [he] really was purchasing methamphetamine from Alan Davis and thereafter from Nathan Hogan then it's obvious that [he] would have known the price of methamphetamine in Georgia was less than $1,400." [*Id.* at 4]. But with this counterargument,

he ignores the ample evidence showing that he did in fact—irrespective of the price—purchase methamphetamine, or arrange for Mr. Hilliard to purchase it, from Mr. Hogan. *See* [Sixth Circuit Op. at 2–3]. The Court therefore cannot conclude that Mr. Davis's testimony would have resulted in Mr. Potter's acquittal at trial. *See Strickland*, 466 U.S. at 694 (recognizing that a petitioner must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). He therefore fails to satisfy *Strickland*'s two-part test.

### 3. Failure to Introduce Certain Evidence at Trial

Mr. Potter goes on to allege that his attorney was ineffective because he failed to present certain evidence at trial: (1) a recorded jail call that allegedly shows Mr. Hogan "lied when he testified that he sold [Mr. Potter] methamphetamine" and (2) a letter that "prove[s] Nathan Hogan lied when he testified that [Mr. Potter] began purchasing methamphetamine from him as soon as [Mr. Potter] was released from prison." [Pet'r's Mot. at 9]. Mr. Potter also maintains that his attorney was ineffective for failing to bring a certain e-mail to the Court's attention after trial. According to Mr. Potter, his attorney received an e-mail from Mr. Hilliard, who allegedly told Mr. Potter's attorney that he wished to recant his testimony that Josh Robinette owed Mr. Potter money for methamphetamine because he learned after trial that Josh Robinette never purchased methamphetamine from Mr. Potter. [*Id.*].[2] The United States does not directly respond to Mr. Potter's complaints that his attorney's alleged mishandling of evidence, but it does generally contend that Mr. Potter fails to establish prejudice to support his claims of ineffective assistance

---

[2] At trial, Mr. Hilliard did indeed testify that he collected drug money from Mr. Robinette at Mr. Potter's behest. [Trial Tr., Doc. 859, 96:20–25, 97:1–3].

of counsel. *See* [United States' Resp. at 7 ("[P]etitioner has not shown that there is a reasonable probability he would have been acquitted at trial, had counsel acted differently.")].

The Court begins with Mr. Potter's allegations as to the alleged recorded jail call and the letter, and it cannot help but observe that Mr. Potter asserts only that these two pieces of evidence would have shown that Mr. Hogan lied during his testimony at trial. They would have therefore operated only as impeachment evidence and not exculpatory evidence. *See Kelley v. Burton*, 792 F. App'x 396, 397 n.1 (6th Cir. 2020) (stating that "impeachment evidence" is "evidence undermining witness credibility" (citation omitted)); *see United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1988) (stating that exculpatory evidence is evidence "going to the heart of the defendant's guilt or innocence," while impeachment evidence is evidence that has "the potential to alter the jury's assessment of the credibility of a significant prosecution witness" (citations omitted)). Again, an attorney acts deficiently only if he fails to present exculpatory evidence at trial, *Caldwell*, 414 F. App'x at 815–16, and Mr. Potter does not allege that the recorded jail call and the letter were exculpatory in nature. Instead, he characterizes them as impeachment evidence. He therefore fails to show deficient performance on his attorney's part, and as the United States contends, he also makes no meaningful argument that his attorney's failure to present this evidence would have resulted in a different outcome at trial.

Next, the Court turns to Mr. Potter's contention that his attorney, after trial, should have notified the Court of Mr. Hilliard's e-mail and his desire to recant his testimony. Mr. Potter, however, raises no appreciable legal argument and identifies no case law to support his view that his attorney acted deficiently in failing to apprise the Court of Mr. Hilliard's e-mail and his desire to recant his testimony. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed

13

argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)). The gestalt of Mr. Potter's argument appears to be that his attorney should have responded by moving for a new trial. But again, the evidence against Mr. Potter at trial was so strong that the Court cannot conclude that the outcome would have been different if Mr. Hilliard had declined to testify against Mr. Potter at a new trial. *See* [Sixth Circuit Op. at 2–3 (reciting the evidence against Mr. Potter at trial)]; *cf. Rodriguez v. United States*, 110 F. App'x 5, 6 (9th Cir. 2004) (concluding that an attorney's decision not to move for a new trial after discovering that two witnesses might have perjured themselves was "neither deficient nor prejudicial" because "the evidence against [the petitioner] . . . was strong enough to sustain his conviction even without the testimony of the two witnesses who claimed to have perjured themselves"). Mr. Potter therefore fails to satisfy *Strickland*'s two-part test, and he is not entitled to the extraordinary remedy of § 2255 relief.

### B. Mr. Potter's Guidelines Range

Lastly, Mr. Potter claims that the probation officer erred because she "miscalculate[ed] [his] sentencing guidelines range," [Pet'r's Mot. at 5], and he argues that the Court perpetuated the probation officer's error by relying on this miscalculated guidelines range at sentencing. Mr. Potter describes the probation officer's error as follows: "Essentially, defendant's prior state convictions did not rise to the level of enhancing his base level but, only the criminal history category, which would have resulted in a much lower sentence." [Pet'r's Mem. at 5]. In response, the United States argues that Mr. Potter has procedurally defaulted on his claim that the Court relied on an incorrect guidelines range. [United States' Resp. at 4–5]. The Court agrees with the United States.

14

Under the doctrine of procedural default, a defendant who fails to raise an issue on direct appeal may not raise that issue in a § 2255 petition unless he can establish cause and prejudice to excuse his failure. *Huff v. United States*, 734 F.3d 600, 605–06 (6th Cir. 2013). The "hurdle" that a petitioner must vault to excuse procedural default is "intentionally high . . . for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (citation omitted). The element of cause requires "good cause" for the petitioner's failure to raise his claims on direct appeal, and the element of prejudice requires a showing that he "would suffer prejudice if unable to proceed" with those claims. *Regalado*, 334 F.3d at 528 (citing *Bousley v. United States,* 523 U.S. 614, 622 (1998)).[3]

Mr. Potter has not replied to the United States' assertion he has procedurally defaulted on his claim, and he fails to raise any colorable argument that cause and prejudice entitle him to raise this claim in a § 2255 proceeding, or any plausible argument regarding a fundamental miscarriage of justice. The doctrine of procedural default therefore forestalls his claim. *See Simmons v. Schweitzer*, No. 16-4170, 2017 WL 4980159, at *2 (6th Cir. Apr. 5, 2017) ("Reasonable jurists could not disagree with the district court's conclusion that this claim is procedurally defaulted because [the petitioner] offers no colorable argument that cause and prejudice excuse his default, or that the failure to excuse his default would result in a fundamental

---

[3] Rarely, a defendant who fails to establish cause and prejudice can still obtain review of his post-conviction claims if it is necessary to avoid a fundamental miscarriage of justice, as when a defendant is able to show his actual innocence by submitting new evidence to the Court. *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *see Bousley*, 523 U.S. at 622–24 (stating that "'actual innocence' means factual innocence, not mere legal insufficiency" (citation omitted)); *see also McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (stating that the actual-innocence exception deals with a "severely confined category [of] cases in which new evidence shows 'it is more   likely than not that no reasonable juror would have convicted [the petitioner]'" (quotation omitted)); *Jamison v. Collins*, 100 F. Supp. 2d 521, 533 (S.D. Ohio 1998) ("To demonstrate a 'fundamental miscarriage of justice,' a petitioner must show that the alleged constitutional violation probably resulted in the conviction of one who is actually innocent." (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986))). Mr. Potter, however, does not allege that a review of his claims is necessary to avoid a fundamental miscarriage of justice.

15

miscarriage of justice."); *United States v. Israel*, Criminal Action No. 5:14-98-DCR-CJS; Civil Action No. 5:17-312-DCR-CJS, 2018 WL 3212071, at *5 (E.D. Ky. Feb. 12, 2018) ("As Defendant has not made any effort to show cause and actual prejudice exist to excuse his procedural default, and Defendant has not satisfied the requirements of the actual innocence exception, Defendant's claim . . . is procedurally defaulted."). Mr. Potter has, therefore, procedurally defaulted on his claim that the Court applied an incorrect guidelines range.

But even if Mr. Potter had not procedurally default on this claim, it would still fail on the merits. "[A]n error in the application of the Sentencing Guidelines does not warrant collateral relief under § 2255 unless there is a complete miscarriage of justice." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (citation omitted). To meet this "demanding standard," Mr. Potter must "prove that he is either actually innocent of his crime or that a prior conviction used to enhance his sentence has been vacated." *Bullard v. United States*, 937 F.3d 654, 658 (6th Cir. 2019) (quotation omitted); *see Grant*, 72 F.3d at 506 (stating that an error does not rise to a complete miscarriage of justice unless it is "positively outrageous"). He does not, however, allege—let alone attempt to show—either one. The Court sentenced him to a guidelines-range sentence, and he does not even come close to showing, under the narrow limits of collateral review, that this case is one of "[t]hose rare instances" in which a non-constitutional error occurred "in a context that is so positively outrageous as to indicate a 'complete miscarriage of justice.'" *Grant*, 72 F.3d at 506. He is therefore not entitled to § 2255 relief, not only because he has procedurally defaulted on his claim but also because his claim fails on the merits.

### C. Certificate of Appealability

Lastly, the Court must determine whether to issue a certificate of appealability, which is necessary for Mr. Potter to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue

a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing, the petitioner must show that reasonable jurists would find the Court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Having addressed the merits of Mr. Potter's claims, the Court does not conclude that reasonable jurists would find that its rejection of his claims is debatable or wrong. The Court therefore declines to issue a certificate of appealability to Mr. Potter.

## IV.  CONCLUSION

As the petitioner under § 2255, Mr. Potter fails to meet his burden of establishing that his conviction and sentence are in violation of the Constitution, or that a fundamental defect resulted in a complete miscarriage of justice or an egregious error. Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1] is therefore **DENIED**, and all outstanding motions are **DENIED as moot**. The Court will enter an order consistent with this opinion.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE